CHESTER BLAST FURNACE, INC., Appellant,

v.

THE FLORENCE, Her Engines, Boilers, etc., and Her Owner Florida Towing Corporation,

Donald D. Patrick, as Owner and Claimant of THE PASSYUNK, Jean V. Patrick and Quaker City Navigation Company (Impleaded Respondents).

No. 12842.

United States Court of Appeals Third Circuit.

Argued Sept. 22, 1959.

Decided Oct. 9, 1959.

---

George F. G. Blewett, Philadelphia, Pa., for appellant.

Daniel J. Ryan, Philadelphia, Pa. (La Brum & Doak, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal in an admiralty case. The bulk of the testimony in the trial court related to the actions respectively of the Tug Florence and the Tug Passyunk and their collision on the Delaware River. This was resolved by the trial judge who found the case one where each of the parties was negligent and, therefore, divided the damages between the parties in accordance with the admiralty rule. *Patrick v. The Florence*, D.C.E.D.Pa.1958, 167 F.Supp. 906.

This appeal concerns only the claim of the Chester Blast Furnace, Inc. Chester Blast Furnace bought coke from the Philadelphia Coke Company and had it transported to Chester in the barge "Wilmington." Unloading took place at the Philadelphia Electric Company's wharf in Chester by means of a mobile crane and a type of shovel called a "clam shell." This clam shell scooped up part of the coke in the five compartments of the barge but necessarily, from its shape, left material in the corners. This was not trimmed out after each voyage because it was thought that the cost of and time consumed in trimming was not as economical as taking the barge back to Philadelphia to be reloaded.

The barge "Wilmington" which was being used exclusively to carry this coke, in tow of the Tug Passyunk, sank as a total loss in the collision. The trial judge assessed the damages for the loss of the barge. But he thought that the claim of the present appellant was not sufficiently well sustained to allow recovery.

While the proof on this point was certainly lacking in that degree of definiteness which makes the life of the trial judge a pleasanter one, we think there was enough on which a not too unreasonably inaccurate estimate of the damage could have been made. That there was some coke left in this barge in its voyage back to Philadelphia is clear. The two questions are: (1) how much was there; and (2) how much was it worth?

The amount remaining in the barge was figured by the surveyor who came in following the accident. He examined the figures which the Coke Company had from which it had made its freight payments for the amount unloaded at the

Chester pier. He knew the quantity which Philadelphia Coke had shipped and the various barge loads that had gone to Chester Blast Furnace. From this there was a conclusion that there was about 314 tons of coke in the barge at the time she was sunk. An officer of appellant who had aided the surveyor in the compilation of these figures testified to the same effect. Captain Jean Patrick, of the Tug Passyunk, testified as to the quantity and named it as 314 tons. It must be admitted that his testimony was based upon information received from the appellant and not an independent estimate on his part. While the testimony, as said above, is not as definite as one would like to have it, it provides some basis on which to go and since undoubtedly there was some loss of cargo which belonged to the appellant and since the evidence seemed to be about as good as the nature of the case permitted, there should be recovery for the loss.

How much should the recovery be? It is true that there was no evidence of market value. But it was established that Chester Blast Furnace was paying $12.50 a ton for the coke. We disregard assertions that this was very choice coke and that Japanese buyers shipped it all the way from Philadelphia to Japan. There is no such testimony in the record. But we think that what a buyer is paying for a commodity over a period of time shows that the loss of a quantity of that commodity puts him as much out of pocket as he has paid for the destroyed cargo. Compare Teets v. Hahn, 1928, 104 N.J.L. 357, 140 A. 427.

The judgment of the district court will be reversed insofar as it fixes the amount of damages of Chester Blast Furnace, Inc. The case will be remanded to the district court for a new trial on the limited question of the damages suffered by Chester Blast Furnace, Inc. Fed.R. Civ.P. 59(a), 28 U.S.C.A. See Darbrow v. McDade, 3 Cir., 1958, 255 F.2d 610, and cases cited therein.